**THE SULTZER LAW GROUP P.C.**
Jason P. Sultzer
Joseph Lipari
Daniel Markowitz
Mindy Dolgoff
85 Civic Center Plaza, Suite 200
Poughkeepsie, New York 12601
Telephone: (845) 483-7100
Facsimile: (888) 749-7747

**REESE LLP**
Michael R. Reese
Sue J. Nam
Carlos F. Ramirez
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

*Counsel for Plaintiff and the Class*


**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ————————————————————— x | |
| Leiba Baumgarten, individually and on behalf of all others similarly situated, | : : : |
| Plaintiff, | : Case No. |
| v. | : : : |
| The Hain Celestial Group, Inc., | : **CLASS ACTION COMPLAINT** |
| Defendant. | : : **JURY TRIAL DEMANDED** |
| | : : : |
| ————————————————————— x | |

1

Plaintiff, Leiba Baumgarten (hereinafter "Plaintiff"), individually and on behalf of all others similarly situated, by her attorneys, alleges the following upon information and belief, except for those allegations pertaining to Plaintiff, which are based on personal knowledge:

## NATURE OF THE ACTION

1.      This action seeks to remedy the deceptive and misleading business practices of The Hain Celestial Group, Inc. (hereinafter "Defendant") with respect to the marketing and sales of Defendant Hain Celestial Group, Inc.'s Earth's Best Organic and Earth's Best product line throughout the State of New York and throughout the country.  The Earth's Best Organic products include the following products (hereinafter the "Products"):

- Earth's Best Organic Organic Dairy Infant Formula with Iron Milk-Based Powder;

- Earth's Best Organic Organic Sensitivity Infant Formula with Iron Milk-Based Powder;

- Earth's Best Organic Organic Gentle Infant Formula with Iron Milk-Based Powder;

- Earth's Best Organic Organic Toddler Milk Drink Powder;

- Earth's Best Non-GMO Plant Based Infant Formula with Iron Soy-Based Powder;

- Earth's Best Organic Whole Grain Oatmeal Cereal;

- Earth's Best Organic Rice Cereal;

- Earth's Best Organic Whole Grain Multi-Grain Cereal;

- Earth's Best Organic Organic Banana Blueberry Baby Food Puree Pouch;

- Earth's Best Organic Organic Apple Strawberry Baby Food Puree Pouch;

2

- Earth's Best Organic Organic Sweet Potato Cinnamon Flax & Oat Wholesome Breakfast Pouch;

- Earth's Best Organic Organic Blueberry Banana Flax & Oat Wholesome Breakfast Puree Pouch;

- Earth's Best Organic Organic Peach Mango Baby Food Puree Pouch;

- Earth's Best Organic Organic Apple Peach Oatmeal Fruit & Grain Puree Pouch;

- Earth's Best Organic Organic Carrots & Broccoli Veggie Puree Pouch;

- Earth's Best Organic Organic Sweet Potato & Apple Baby Food Puree Pouch;

- Earth's Best Organic Organic Orange Banana Baby Food Puree Pouch;

- Earth's Best Organic Organic Butternut Squash Pear Baby Food Puree Pouch;

- Earth's Best Organic Organic Apple Raisin Flax & Oat Wholesome Breakfast Puree Pouch;

- Earth's Best Organic Organic Pumpkin & Spinach Veggie Puree Pouch;

- Earth's Best Organic Organic Squash & Sweet Peas Baby Food Puree Pouch;

- Earth's Best Organic Organic Sweet Potato Garbanzo Barley Veggie & Protein Puree Pouch;

- Earth's Best Organic Organic Sweet Potato & Beets Veggie Puree Pouch;

- Earth's Best Organic Organic Banana Raspberry & Brown Rice Fruit & Grain Puree Pouch;

- Earth's Best Organic Organic Apple Sweet Potato Pumpkin & Blueberry Baby Food Puree Pouch;

3

- Earth's Best Organic Organic Pasta with Tomato & White Bean made with Olive Oil Pouch;

- Earth's Best Organic Organic Banana Apricot Pumpkin with Yogurt, Oat and Quinoa Wholesome Breakfast Puree Pouch;

- Earth's Best Organic Organic Strawberry Peach Pear with Yogurt, Oat and Quinoa Wholesome Breakfast Puree Pouch;

- Earth's Best Organic Organic Spinach Lentil Brown Rice Veggie & Protein Puree Pouch;

- Earth's Best Organic Organic Chicken Casserole with Vegetables & Rice Homestyle Meal Puree Pouch;

- Earth's Best Organic Organic Pear Carrot Apricot Baby Food Puree Pouch;

- Earth's Best Organic Organic Pumpkin Cranberry Apple Baby Food Puree Pouch;

- Earth's Best Organic Organic Cheesy Pasta with Veggies Homestyle Meal Pouch;

- Earth's Best Organic Organic Turkey Quinoa Apple Sweet Potato Homestyle Meal Pouch;

- Earth's Best Organic Organic Chicken Pot Pie Homestyle Meal Pouch;

- Earth's Best Organic Organic Beef Medley with Vegetables Homestyle Meal Puree Pouch;

- Earth's Best Organic Turkey & Turkey Broth Organic Baby Food Stage 1;

- Earth's Best Organic Chicken & Chicken Broth Organic Baby Food Stage 1;

- Earth's Best Organic Sweet Potato & Chicken Organic Baby Food Stage 2;

4

- Earth's Best Organic Apple Apricot Organic Baby Food Stage 2;

- Earth's Best Organic Apple & Plums Organic Baby Food Stage 2;

- Earth's Best Organic Pears & Mangos Organic Baby Food Stage 2;

- Earth's Best Organic Sweet Potato Apricot Organic Baby Food Stage 2;

- Earth's Best Organic Vegetable Turkey Dinner Organic Baby Food Stage 2;

- Earth's Best Organic Sweet Potatoes Organic Baby Food Stage 2;

- Earth's Best Organic Peach Oatmeal Banana Organic Baby Food Stage 2;

- Earth's Best Organic Banana Mango Organic Baby Food Stage 2;

- Earth's Best Organic Apple Butternut Squash Organic Baby Food Stage 2;

- Earth's Best Organic Banana Peach Raspberry Organic Baby Food Stage 2;

- Earth's Best Organic Apples & Blueberries Organic Baby Food Stage 2;

- Earth's Best Organic Corn & Butternut Squash Organic Baby Food Stage 2;

- Earth's Best Organic Chicken & Rice Organic Baby Food Stage 2;

- Earth's Best Organic Pears & Raspberries Organic Baby Food Stage 2;

- Earth's Best Organic Sweet Potato & Chicken Organic Baby Food Stage 2;

- Earth's Best Organic Winter Squash Organic Baby Food Stage 2;

- Earth's Best Organic Pears Organic Baby Food Stage 2;

- Earth's Best Organic Bananas Organic Baby Food Stage 2;

- Earth's Best Organic Carrots Organic Baby Food Stage 2;

- Earth's Best Organic Apples Organic Baby Food Stage 2;

- Earth's Best Organic Peas Organic Baby Food Stage 2;

- Earth's Best Organic Tender Chicken & Stars Organic Baby Food Stage 3;

- Earth's Best Organic Apple Cinnamon Oatmeal Organic Baby Food Stage 3;

- Earth's Best Organic Organic Fruit Yogurt Smoothie Strawberry Banana Pouch;

- Earth's Best Organic Organic Fruit Yogurt Smoothie Peach Banana Pouch;

- Earth's Best Organic Organic Fruit Yogurt Smoothie Pineapple Orange Banana Pouch;

- Earth's Best Organic Organic Fruit Yogurt Smoothie Mixed Berry Pouch;

- Earth's Best Organic Organic Fruit Yogurt Smoothie Pear Mango Pouch;

- Earth's Best Organic Organic Fruit Yogurt Smoothie Apple Blueberry Pouch;

- Earth's Best Organic Organic Veggie Red Lentil Bake with Olive Oil Protein Puree Pouch;

- Earth's Best Organic Organic Four Bean Feast with Vegetables Protein Puree Pouch.

2.      Caregivers like Plaintiff trust manufacturers like Defendant to sell food for babies/children that is nutritious, safe, and free from harmful toxins, contaminants, and chemicals. Caregivers certainly expect that the food that they feed their infants and toddlers will be free from heavy metals, harmful toxins, and contaminants.

3.      Plaintiff and those similarly situated ("Class Members") relied on Defendant's misrepresentations when purchasing the Products.  Plaintiff and Class Members paid a premium for the Products based upon their representations.  Given that Plaintiff and Class Members paid a

premium for the Products based on Defendant's misrepresentations, Plaintiff and Class Members suffered an injury in the amount of the premium paid.

4.       Defendant's conduct violated and continues to violate, *inter alia*, New York General Business Law §§ 349 and 350, and the Magnuson-Moss Warranty Act.  Defendant breached and continues to breach its warranties regarding the Products.  Defendant fraudulently concealed material facts regarding the Products.  Defendant has been and continues to be unjustly enriched.  Accordingly, Plaintiff brings this action against Defendant on behalf of herself and Class Members who purchased the Products during the applicable statute of limitations period (the "Class Period").

## FACTUAL BACKGROUND

5.       Consumers lack the scientific knowledge necessary to determine whether the Defendant's products contain heavy metals or to know or ascertain the true nature of the ingredients and quality of the Products.  Reasonable consumers therefore must and do rely on Defendant to honestly report what its products contain.

6.       Defendant did not list heavy metals as an ingredient on its Products' labels, nor did it warn of the potential presence of toxic heavy metals in its Products.

7.       A recent report by the U.S. House of Representatives' Subcommittee on Economic and Consumer Policy, Committee on Oversight and Reform reveals that caregivers' trust has been violated. Ex. 1. The Subcommittee's investigation of the seven largest baby food manufacturers in the United States, including Defendant, was spurred by "reports alleging high levels of toxic heavy metals in baby foods" and the knowledge that

"[e]ven low levels of exposure can cause serious and often irreversible damage to brain development." Ex. 1 at pg. 2.

8.      The Subcommittee's report revealed that "[i]nternal company standards permit dangerously high levels of toxic heavy metals, and ... that the manufacturers have often sold foods that exceeded these levels." Ex. 1 at pg. 4.

9.      The investigation found that, when baby food manufacturers were left to self-regulate and establish their own heavy metals standards, they routinely failed to abide by their own standards. Ex. 1.

10.     The Subcommittee also revealed that baby foods are "tainted with significant levels of toxic heavy metals, including arsenic, lead, cadmium, and mercury." Ex. 1 at pg. 2.

11.     The Subcommittee's investigation has found that baby food manufacturers are selling baby food with higher levels of lead than what is allowed by existing standards for water, juice, and candy. Ex. 1 at pg. 22.

12.     Defendant's own internal testing data demonstrates that Defendant sold baby foods even when they or their ingredients contained unsafe levels of lead. Ex. 1 at pg. 22.

13.     Specific to Defendant, the report noted that "Hain typically only tested its ingredients, not finished products." Ex. 1 at pg. 3.

14.     Defendant's egregious lack of quality control led to the following findings by the Subcommittee:

        a.      Defendant set an internal standard of 200 ppb arsenic for 12 ingredients,

8

most of which were different kinds of flours.  By setting this high internal standard, Hain justified accepting wheat flour and rice that contained 200 and 150 ppb arsenic. Ex. 1 at pg. 39;

b.     Defendant set an internal limit of 200 ppb for lead in five ingredients (forty times higher than FDA's guidance for bottled water).  By doing so, Defendant justified accepting lentil flour with 110 ppb lead and quinoa flour with 120 ppb lead.  These surpass every existing regulatory standard for lead.  In fact, Defendant used ingredients that contained as much as 352 ppb lead, used 88 ingredients with lead levels at or over 20 ppb (the EU's standard for lead in infant formula), accepted 115 ingredients that registered at or over 15 ppb (EPA's action level for drinking water), and at least 27% of Defendant's ingredients tested at or over 5 ppb lead (FDA's standard for lead in bottled water).  None of the test results showed an ingredient below 1 ppb lead, which should be the upper limit for lead content according to the health experts at Consumer Reports, the Environmental Defense Fund, and the American Academy of Pediatrics. Ex. 1 at pgs. 26-27;

c.     Defendant used 14 ingredients that contained more than 100 ppb cadmium, including barley flour that registered at 260 ppb cadmium (which is thirteen times the EU's lax upper limit on cadmium in baby food).  Defendant tested and used 102 ingredients that registered at or

above 20 ppb cadmium (the EU's lax upper limit).  Ex. 1 at pg. 30;

d.       Defendant did not even test for mercury in baby food.  Ex. 1 at pg. 4;

e.       These results are multiples higher than allowed under existing regulations for other products.  For example, the FDA has set the maximum allowable levels in bottled water at 10 ppb inorganic arsenic, 5 ppb lead, and 5 ppb cadmium, and the EPA has capped the allowable level of mercury in drinking water at 2 ppb.  Ex. 1 at pg. 4;

f.       Defendant set an internal standard of 200 ppb for arsenic, lead, and cadmium in some of its ingredients.  But Hain exceeded its internal policies, using ingredients containing 353 ppb lead and 309 ppb arsenic. Hain justified deviations above its ingredient testing standards based on "theoretical calculations," even after Defendant admitted to the FDA that its testing underestimated final product toxic heavy metal levels.  Ex. 1 at pgs. 4-5.

g.       On August 1, 2019, the FDA received a secret slide presentation from Defendant, which revealed that:

• Corporate policies to test only ingredients, not final products, underrepresent the levels of toxic heavy metals in baby foods.  In 100% of the Hain baby foods tested, inorganic arsenic levels were higher in the finished baby food than the company estimated they would be based on individual ingredient testing.  Inorganic arsenic was between 28% and

10

93% higher in the finished products;

• Many of Defendant's baby foods were tainted with high levels of inorganic arsenic—half of its brown rice baby foods contained over 100 ppb inorganic arsenic; its average brown rice baby food contained 97.62 ppb inorganic arsenic;

• Naturally occurring toxic heavy metals may not be the only problem causing the unsafe levels of toxic heavy metals in baby foods; rather, baby food producers like Defendant may be adding ingredients that have high levels of toxic heavy metals into their products, such as vitamin/mineral pre-mix.  Ex. 1 at pgs. 5, 43; and

• Even four months after it had made the secret presentation to the FDA admitting that the heavily tainted vitamin premix caused dangerous levels of arsenic in its finished products (which initially went undetected because Defendant did not test its finished products), Defendant made no effort to correct the problem.  Ex. 1 at pgs. 42-43.

15.     In its conclusion, the Subcommittee stressed the danger associated with the presence of heavy metals in baby food: "These toxic heavy metals pose serious health risks to babies and toddlers.   Manufacturers knowingly sell these products to unsuspecting caregivers, in spite of internal company standards and test results, and without any warning labeling whatsoever." Ex. 1 at pg. 59.

16.     Defendant's deceptive representations and omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions.

17.     Even after they were fully aware (and made a secret presentation to the FDA about it), Defendant still willfully failed to warn Plaintiff and the Class of the elevated levels of toxic heavy metals in the Products.

18.     Defendant also knows that consumers, such as Plaintiff and the Class, are unwilling to purchase baby food that contain elevated levels of toxic heavy metals.

19.     Defendant knew that if the elevated levels of toxic heavy metals in their respective brands of baby food was disclosed to Plaintiff and Class members, then Plaintiff and Class members would be unwilling to purchase the Products.

20.     Defendant has thus violated, *inter alia*,  NY General Business Law § 392-b by: a) putting upon an article of merchandise, bottle, wrapper, package, label or other thing, containing or covering such an article, or with which such an article is intended to be sold, or is sold, a false description or other indication of or respecting the kind of such article or any part thereof; and b) selling or offering for sale an article, which to its knowledge is falsely described or indicated upon any such package, or vessel containing the same, or label thereupon, in any of the particulars specified.

21.     Plaintiff and the Class members reasonably relied to their detriment on Defendant's misleading representations and omissions.

22.     Defendant's false, misleading, and deceptive misrepresentations and omissions are likely to continue to deceive and mislead reasonable consumers and the general public, as they have already deceived and misled Plaintiff and the Class members.

23.     As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representations and omissions, Defendant injured Plaintiff and the Class members in that they:

  a.     Paid a sum of money for Products that were not what Defendant represented;

  b.     Paid a premium price for Products that were not what Defendant represented;

  c.     Were deprived of the benefit of the bargain because the Products they purchased were different from what Defendant warranted;

  d.     Were deprived of the benefit of the bargain because the Products t they purchased had less value than what Defendant represented;

  e.     Ingested a substance that was of a different quality than what Defendant promised; and

  f.     Were denied the benefit of the beneficial properties of the natural foods Defendant promised.

24.     Had Defendant not made the false, misleading, and deceptive representations and omissions, Plaintiff and the Class members would not have been willing to pay the same amount for the Products they purchased.

25.     Plaintiff and the Class members all paid money for the Products; however, Plaintiff and the Class members did not obtain the full value of the advertised Products due to Defendant's misrepresentations and omissions.  Plaintiff and the Class members purchased, purchased more of, and/or paid more for the Products than they would have had they known the truth about the

13

Products.  Consequently, Plaintiff and the Class members have suffered injury in fact and lost money as a result of Defendant's wrongful conduct.

## JURISDICTION AND VENUE

26.     This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. section 1332(d) in that: (1) this is a class action involving more than 100 class members; (2) Plaintiff is a citizen of the State of New York, Defendant The Hain Celestial Group is a citizen of the State of New York; more than two-thirds of the class members reside outside the State of New York; and (3) the amount in controversy is in excess of $5,000,000, exclusive of interests and costs.

27.     This Court has personal jurisdiction over Defendant because Defendant conducts and transacts business in the State of New York, contracts to supply goods within the State of New York, and supplies goods within the State of New York.

28.     Venue is proper because Plaintiff and many Class Members reside in the Eastern District of New York, and throughout the State of New York.  A substantial part of the events or omissions giving rise to the classes' claims occurred in this District.

## PARTIES

**Plaintiff**

29.     Plaintiff is an individual consumer who, at all times material hereto, was a citizen of New York State.  Plaintiff purchased the Products during the Class Period.  The packaging of the Products Plaintiff purchased did not contain the representation that the Products contained

14

harmful contaminants and heavy metals. If the Products actually were free of harmful contaminants and heavy metals, Plaintiff would purchase the Products in the immediate future.

30. Had Defendant not made the false, misleading, and deceptive representations and omissions regarding the Products, Plaintiff would not have been willing to pay the same amount for the Products, and, consequently, would not have been willing to purchase the Products. Plaintiff purchased, purchased more of, and/or paid more for the Products than she would have had she known the truth about the Products. The Products Plaintiff received were worth less than the Products for which she paid. Plaintiff was injured in fact and lost money as a result of Defendant's improper conduct.

**Defendant**

31. Defendant The Hain Celestial Group, Inc. is a corporation with its principal place of business in Lake Success, New York. Defendant manufactures, markets, advertises, and distributes the Products throughout the United States. Defendant created and/or authorized the false, misleading, and deceptive advertisements, packaging, and labeling for the Products.

## CLASS ALLEGATIONS

32. Plaintiff brings this matter on behalf of herself and those similarly situated. As detailed at length in this Complaint, Defendant orchestrated deceptive marketing and labeling practices. Defendant's customers were uniformly impacted by and exposed to this misconduct. Accordingly, this Complaint is uniquely situated for class-wide resolution, including injunctive relief.

33.     The Class is defined as all consumers who purchased the Products anywhere in the United States during the Class Period (the "Class").

34.     Plaintiff also seeks certification, to the extent necessary or appropriate, of a subclass of individuals who purchased the Products in the State of New York at any time during the Class Period (the "New York Subclass").

35.     The Class and New York Subclass shall be referred to collectively throughout the Complaint as the Class.

36.     The Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

37.     Numerosity: Class Members are so numerous that joinder of all members is impracticable.  Plaintiff believes that there are thousands of consumers who are Class Members described above who have been damaged by Defendant's deceptive and misleading practices.

38.     Commonality: The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

   a.   Whether Defendant are responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Products;

   b.   Whether Defendant's misconduct set forth in this Complaint demonstrates that Defendant has engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of their Products;

16

c.  Whether Defendant made false and/or misleading statements to the Class and the public concerning the contents of its Products;

d.  Whether Defendant's false and misleading statements concerning its Products were likely to deceive the public;

e.  Whether Plaintiff and the Class are entitled to injunctive relief; and

f.  Whether Plaintiff and the Class are entitled to money damages under the same causes of action as the other Class Members?

39.  <u>Typicality</u>: Plaintiff is a member of the Class.  Plaintiff's claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same deceptive, misleading conduct and purchased the Defendant's Products.  Plaintiff is entitled to relief under the same causes of action as the other Class Members.

40.  <u>Adequacy</u>: Plaintiff is an adequate Class representative because her interests do not conflict with the interests of the Class Members she seeks to represent, her consumer fraud claims are common to all members of the Class and she has a strong interest in vindicating her rights, she has retained counsel competent and experienced in complex class action litigation, and counsel intends to vigorously prosecute this action.

41.  <u>Predominance</u>: Pursuant to Rule 23(b)(3), common issues of law and fact identified above predominate over any other questions affecting only individual members of the Class.  The Class issues fully predominate over any individual issue because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendant's deceptive and misleading marketing and labeling practices.

17

42.    <u>Superiority</u>: A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

a.   The joinder of thousands of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

b.   The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claim, thereby making it impracticable, unduly burdensome, and expensive—if not totally impossible—to justify individual actions;

c.   When Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

d.   This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e.   Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

f.   This class action will assure uniformity of decisions among Class Members;

g.   The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation;

18

h.   Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by single class action; and

i.   It would be desirable to concentrate in this single venue the litigation of all plaintiffs who were induced by Defendant's uniform false advertising to purchase its Products.

43.   Accordingly, this Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

## INJUNCTIVE CLASS RELIEF

44.   Rules 23(b)(1) and (2) contemplate a class action for purposes of seeking class-wide injunctive relief.  Here, Defendant has engaged in conduct resulting in misleading consumers about ingredients in its Products.  Since Defendant's conduct has been uniformly directed at all consumers in the United States, and the conduct continues presently, injunctive relief on a class-wide basis is a viable and suitable solution to remedy Defendant's continuing misconduct.  Plaintiff would purchase the Products again if the ingredients were changed.

45.   The injunctive Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

a. <u>Numerosity</u>: Individual joinder of the injunctive Class Members would be wholly impracticable.  Defendant's Products have been purchased by thousands of people throughout the United States;

b. <u>Commonality</u>: Questions of law and fact are common to members of the Class. Defendant's misconduct was uniformly directed at all consumers.  Thus, all members of the Class have a common cause against Defendant to stop its misleading conduct through an injunction.  Since the issues presented by this injunctive Class deal exclusively with Defendant's misconduct, resolution of these questions would necessarily be common to the entire Class.  Moreover, there are common questions of law and fact inherent in the resolution of the proposed injunctive class, including, *inter alia*:

    i. Resolution of the issues presented in the 23(b)(3) class;

    ii. Whether members of the Class will continue to suffer harm by virtue of Defendant's deceptive product marketing and labeling; and

    iii. Whether, on equitable grounds, Defendant should be prevented from continuing to deceptively mislabel its Products?

c. <u>Typicality</u>: Plaintiff's claims are typical of the claims of the injunctive Class because her claims arise from the same course of conduct (i.e. Defendant's deceptive and misleading marketing, labeling, and advertising practices).  Plaintiff is a typical representative of the Class because, like all members of the injunctive

Class, she purchased Defendant's Products which were sold unfairly and deceptively to consumers throughout the United States.

d. <u>Adequacy</u>: Plaintiff will fairly and adequately represent and protect the interests of the injunctive Class.  Her consumer protection claims are common to all members of the injunctive Class and she has a strong interest in vindicating her rights.  In addition, Plaintiff and the Class are represented by counsel who is competent and experienced in both consumer protection and class action litigation.

46.     The injunctive Class is properly brought and should be maintained as a class action under Rule 23(b)(2) because Plaintiff seeks injunctive relief on behalf of the Class Members on grounds generally applicable to the entire injunctive Class.  Certification under Rule 23(b)(2) is appropriate because Defendant has acted or refused to act in a manner that applies generally to the injunctive Class (i.e. Defendant has marketed its Products using the same misleading and deceptive labeling to all of the Class Members).  Any final injunctive relief or declaratory relief would benefit the entire injunctive Class as Defendant would be prevented from continuing its misleading and deceptive marketing practices and would be required to honestly disclose to consumers the nature of the contents of its Products.  Plaintiff would purchase the Products again if the ingredients were changed.

**FIRST CAUSE OF ACTION**
**VIOLATION OF NEW YORK GBL § 349**
**(On Behalf of Plaintiff and New York Subclass Members)**

47.     Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

48.     New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

49.     The conduct of Defendant alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiff and the New York Subclass Members seek monetary damages and the entry of preliminary and permanent injunctive relief against Defendant, enjoining them from inaccurately describing, labeling, marketing, and promoting the Products.

50.     There is no adequate remedy at law.

51.     Defendant misleadingly, inaccurately, and deceptively advertise and market its Products to consumers.

52.     Defendant's improper consumer-oriented conduct is misleading in a material way in that it, *inter alia*, induced Plaintiff and the New York Subclass Members to purchase and pay a premium for Defendant's Products and to use the Products when they otherwise would not have. Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

53.     Plaintiff and the New York Subclass Members have been injured inasmuch as they paid a premium for products that were contrary to Defendant's representations. Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and/or paid for.

54.     Defendant's advertising and Products' packaging and labeling induced the Plaintiff and the New York Subclass Members to buy Defendant's Products and to pay a premium price for them.

55.     Defendant's deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiff and the New York Subclass Members have been damaged thereby.

56.     As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and the New York Subclass Members are entitled to monetary, statutory, compensatory, treble and punitive damages, injunctive relief, restitution, and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

<u>**SECOND CAUSE OF ACTION**</u>
<u>**VIOLATION OF NEW YORK GBL § 350**</u>
**(On Behalf of Plaintiff and the New York Subclass Members)**

57.     Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

58.     N.Y. Gen. Bus. Law § 350 provides, in part, as follows:

> False advertising in the conduct of any business, trade, or commerce or in the furnishing of any service in this state is hereby declared unlawful.

59.     N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:

> The term 'false advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination

23

thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual . . .

60.     Defendant's labeling and advertisements contain untrue and materially misleading statements concerning Defendant's Products inasmuch as they misrepresent the Products.

61.     Plaintiff and the New York Subclass Members have been injured inasmuch as they relied upon the labeling, packaging, and advertising and paid a premium for the Products which were contrary to Defendant's representations.  Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and/or paid for.

62.     Defendant's advertising, packaging, and products' labeling induced the Plaintiff and the New York Subclass Members to buy Defendant's Products.

63.     Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

64.     Defendant's conduct constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350.

65.     Defendant made the material misrepresentations described in this Complaint in Defendant's advertising and on the Products' packaging and labeling.

66.     Defendant's material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large.  Moreover, all consumers purchasing the Products were and continue to be exposed to Defendant's material misrepresentations.

24

67.     As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and New York Subclass Members are entitled to monetary, statutory, compensatory, treble and punitive damages, injunctive relief, restitution, and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

<u>**THIRD CAUSE OF ACTION**</u>
<u>**BREACH OF EXPRESS WARRANTY**</u>
**(On Behalf of Plaintiff and All Class Members)**

68.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

69.     Defendant provided the Plaintiff and Class Members with an express warranty in the form of written affirmations of fact.

70.     The above affirmations of fact were not couched as "belief" or "opinion," and were not "generalized statements of quality not capable of proof or disproof."

71.     These affirmations of fact became part of the basis for the bargain and were material to the Plaintiff's and Class Members' transactions.

72.     Plaintiff and Class Members reasonably relied upon Defendant's affirmations of fact and justifiably acted in ignorance of the material facts omitted or concealed when they decided to buy Defendant's Products.

73.     Within a reasonable time after they knew or should have known of Defendant's breach, Plaintiff, on behalf of herself and Class Members, placed Defendant on notice of its breach, giving Defendant an opportunity to cure its breach, which it refused to do.

74.     Defendant breached the express warranty because the Products contain heavy metals and contaminants.

75.     As a direct and proximate result of Defendant's breach of the express warranty, Plaintiff and Class Members were damaged in the amount of the price they paid for the Products, in an amount to be proven at trial.

**FOURTH CAUSE OF ACTION**
**VIOLATION OF THE MAGNUSON-MOSS**
**WARRANTY ACT, 15 U.S.C. § 2301 *et seq.***
**(On Behalf of Plaintiff and All Class Members)**

76.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

77.     Plaintiff brings this claim individually and on behalf of all members of the Class. Upon certification, the Class will consist of more than 100 named Plaintiffs.

78.     The Magnuson-Moss Warranty Act provides a federal remedy for consumers who have been damaged by the failure of a supplier or warrantor to comply with any obligation under a written warranty or implied warranty, or other various obligations established under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*

79.     The Products are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

80.     Plaintiff and other members of the Class are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

81.     Defendant are "suppliers" and "warrantors" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301(4) & 2301(5).

82.     Defendant did not represent in writing that the Products contained heavy metals and contaminants.

83.     These statements were made in connection with the sale of the Products and relate to the nature of the Products and affirm and promise that the Products are as represented and defect free and, as such, are "written warranties" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6)(A).

84.     As alleged herein, Defendant breached the written warranty by selling consumers Products that contain heavy metals and contaminants.

85.     The Products do not conform to Defendant's written warranty and therefore violate the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq*.  Consequently, Plaintiff and the other members of the Class have suffered injury and are entitled to damages in an amount to be proven at trial.

### FIFTH CAUSE OF ACTION
### FRAUDULENT CONCEALMENT
**(On Behalf of Plaintiff and All Class Members)**

86.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

87.     Defendant concealed and failed to disclose the material fact the Products contained, or were at risk of containing, elevated levels of toxic heavy metals, that they were not

testing the amount of toxic heavy metals in their finished products, and that the products were not safe or healthy for consumption.

88.     Defendants had knowledge that the Products contained, or were at risk of containing, elevated levels of toxic heavy metals, that they were not testing the amount of toxic heavy metals in their finished products, and that the products were not safe or healthy for consumption.

89.     Defendants had a duty to disclose that the Products contained, or were at risk of containing, elevated levels of toxic heavy metals, that they were not testing the amount of toxic heavy metals in their finished products, and that the products were not safe or healthy for consumption.

90.     Defendants had superior knowledge or means of knowledge available to them and knew that Plaintiff and the Class would rely upon the representations and omissions of Defendant regarding the quality of its products.  Consumers lack the meaningful ability to test or independently ascertain or verify whether a product contains elevated levels of toxic heavy metals, especially at the point of sale.

91.     Defendant's concealment was material and intentional because caregivers are concerned with what they are feeding to the children in their care.  Caregivers are influenced by the ingredients listed, as well as any warnings (or lack thereof) on the products they buy and feed to the children in their care.  Defendant knows that if it had not omitted that the Products contained, or were at risk of containing, elevated levels of toxic heavy metals, that they were not testing the amount of toxic heavy metals in their finished products, and that the products were

28

not safe or healthy for consumption then Plaintiff and the Class would not have paid a premium for the Products (or purchased them at all) and Defendant wanted to increase sales/profits.

92.     Defendant's concealment misled Plaintiff and the Class as to the true nature of what they were buying and feeding to children.

93.     Defendant fraudulently concealed that the Products contained, or were at risk of containing, elevated levels of toxic heavy metals, that they were not testing the amount of toxic heavy metals in their finished products, and that the products were not safe or healthy for consumption.  Consequently, Plaintiff and the other members of the Class have suffered injury and are entitled to damages in an amount to be proven at trial.

**SIXTH CAUSE OF ACTION**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and All Class Members in the Alternative)**

94.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

95.     Plaintiff, on behalf of herself and consumers nationwide, brings a claim for unjust enrichment.

96.     Defendant's conduct violated, *inter alia*, state and federal law by manufacturing, advertising, marketing, and selling its Products while misrepresenting and omitting material facts.

97.     Defendant's unlawful conduct as described in this Complaint allowed Defendant to knowingly realize substantial revenues from selling its Products at the expense of, and to the detriment or impoverishment of, Plaintiff and Class Members, and to Defendant's benefit and enrichment.  Defendant has thereby violated fundamental principles of justice, equity, and good

conscience.

98.    Plaintiff and Class Members conferred significant financial benefits and paid substantial compensation to Defendant for the Products, which were not as Defendant represented them to be.

99.    Under New York's common law principles of unjust enrichment, it is inequitable for Defendant to retain the benefits conferred by Plaintiff and Class Members' overpayments.

100.    Plaintiff and Class Members seek disgorgement of all profits resulting from such overpayments and establishment of a constructive trust from which Plaintiff and Class Members may seek restitution.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of herself and the Class, prays for judgment as follows:

(a) Declaring this action to be a proper class action and certifying Plaintiff as the representative of the Class under Rule 23 of the FRCP;

(b) Enjoining Defendant from continuing its unlawful practices described herein;

(c) Awarding monetary damages and treble damages;

(d) Awarding statutory damages of $50 per transaction, and treble damages for knowing and willful violations, pursuant to N.Y. GBL § 349;

(e) Awarding statutory damages of $500 per transaction pursuant to N.Y. GBL § 350;

(f) Awarding punitive damages;

(g) Awarding Plaintiff and Class Members their costs and expenses incurred in this action, including reasonable allowance of fees for Plaintiff's attorneys and experts, and

reimbursement of Plaintiff's expenses; and

(h) Granting such other and further relief as the Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

Respectfully submitted,

Dated:  February 22, 2021

**THE SULTZER LAW GROUP P.C.**

By: _____*/s/ Jason P. Sultzer*___
Jason P. Sultzer
Joseph Lipari
Daniel Markowitz
Mindy Dolgoff
85 Civic Center Plaza, Suite 200
Poughkeepsie, New York 12601
Telephone: (845) 483-7100
Facsimile: (888) 749-7747

**REESE LLP**
Michael R. Reese
Sue J. Nam
Carlos F. Ramirez
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

*Counsel for Plaintiff and the Class*

31